UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

LLOYD HENRY PHILLIPS            CIVIL ACTION NO. 6:10-cv-01523

VERSUS                         JUDGE HAIK

MICHAEL ASTRUE,                MAGISTRATE JUDGE HANNA
COMMISSIONER OF
SOCIAL SECURITY

# REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability.
Considering the administrative record, the briefs of the parties, and the applicable
law, it is recommended that the Commissioner's decision be REVERSED and
REMANDED for reconsideration consistent with this report and recommendation.

## BACKGROUND AND THE COMMISSIONER'S FINDINGS

On May 21, 2008, Lloyd Henry Phillips applied for Supplemental Security
Income benefits under Title XVI of the Social Security Act, alleging that he has been
disabled since January 1, 1998.[1]  Mr. Phillips was born on May 11, 1965[2] and is

---

[1]     Rec. Doc. 7-3 at 42.

[2]     Rec. Doc. 7-3 at 42.

currently 46 years old.  He graduated from high school in 1983,[3] and has worked as a janitor, bricklayer, and waiter[4] as well as a box baler[5] and pipe inspector.[6]

On September 14, 1992, while working as a janitor at an Air Force base in California, Mr. Phillips injured his back while attempting to move a sofa.[7]  Following the accident, he was diagnosed with herniated disks at L5-S1 and L4-L5.[8]  In March 1993, a laminectomy and discectomy at L5-S1 was planned.[9]  Mr. Phillips confirmed that he underwent back surgery.[10]  The record contains reports from Dr. Mazin Q. Sabri, an orthopedic surgeon who treated Mr. Phillips in 1994.[11]  At that time, Mr. Phillips was post-surgery, having undergone a hemilaminotomy and foraminotomy at L5-S1 as well as microscopic discectomy at L5-S1, but he was continuing to experience constant pain in his lower back as well as in the left leg.  The leg pain was

---

[3]     Rec. Doc. 7-1 at 14.

[4]     Rec. Doc. 7-1 at 14-18; Rec. Doc. 7-4 at 15.

[5]     Rec. Doc. 7-1 at 16-17.

[6]     Rec. Doc. 7-1 at 17, 27-28.

[7]     Rec. Doc. 7-1 at 18; Rec. Doc. 7-4 at 48.

[8]     Rec. Doc. 7-5 at 8, 9, 10.

[9]     Rec. Doc. 7-5 at 10.

[10]     Rec. Doc. 7-1 at 18.

[11]     Rec. Doc. 7-4 at 45 through Rec. Doc. 7-5 at 5.

associated with intermittent tingling and numbness.  Dr. Sabri noted that Mr. Phillips's pain was worsened with prolonged standing, walking, sitting, repeated bending, and stooping.  An MRI taken in January 1994 – after the surgery – showed moderate epidural fibrosis surrounding the S1 nerve root with disc herniation at L5-S1 and L4-5.  At that time, Mr. Phillips had declined trigger point epidural injections in the lower back and he had also declined further surgery.  Conservative treatment with anti-inflammatory medications and analgesic medications was ongoing.  At that time, Dr. Sabri described Mr. Phillips as disabled.[12]

In a Disability Report that appears to be contemporaneous with his application for Social Security benefits, Mr. Phillips complained about herniated discs in his neck and back that allegedly cause his left and right leg to give way at times, cause bad headaches, and cause him not to be able to move his head.[13]  The interviewer noted that Mr. Phillips walked with the assistance of a cane and had difficulty walking.[14]

On July 26, 2008, Mr. Phillips was examined by a consulting physician, Dr. Kelly Babineaux, who found objective findings consistent with Mr. Phillips's claims.  Dr. Babineaux found that Mr. Phillips has spondylolisthesis at C5 and C6 consistent

---

[12]     Rec. Doc. 7-4 at 45.

[13]     Rec. Doc. 7-4 at 9.

[14]     Rec. Doc. 7-4 at 5-6.

with osteoarthritis as well as narrowing of the disc space between L4 and L5, as depicted on x-rays.  Dr. Babineaux also found that Mr. Phillips walks "with slight difficulty."  He noted that Mr. Phillips can walk without a cane but a cane is medically necessary because Mr. Phillips's left leg limp is exacerbated when he walks without the cane and because Mr. Phillips becomes unsteady when he walks without the cane.  Dr. Babineaux found limitation on cervical spine extension, pain with straight leg raise, and limited range of motion in Mr. Phillips's left leg.   Dr. Babineaux further noted that Mr. Phillips has decreased strength in his back.  Dr. Babineaux noted that Mr. Phillips uses a cane, wears a back brace, and takes Darvocet N-100[15] as needed for pain.

On July 25, 2009, Mr. Phillips presented at the emergency room at Iberia Medical Center,[16] complaining of worsening back pain.  He explained that he had previously injured his back and undergone back surgery.  He also advised that he was taking Lortab[17] and Flexeril[18] but was out of both medications.  He was given an

---

[15]     According to http://www.webmd.com, this is a combination medication, containing a narcotic pain reliever (propoxyphene) and a non-narcotic pain reliever (acetaminophen), which is used to help relieve mild to moderate pain.

[16]     Records from this hospital visit are in the record at Rec. Doc. 7-5 at 28-41.

[17]     According to http://www.webmd.com, Lortab is a pain medication.

[18]     According to http://www.webmd.com, Flexeril is a muscle relaxant.

injection of Toradol[19] and prescriptions for Talwin NX[20] and Flexeril.  He was also given a list of orthopedic physicians and advised to follow up with one of them.

On August 12, 2008, Mr. Phillips's application for Social Security benefits was denied.[21]  He requested a hearing, and a hearing was held on November 4, 2009 before Administrative Law Judge ("ALJ") Steven C. Graalmann.[22]  Mr. Phillips appeared at the hearing along with a non-attorney representative, paralegal Bridget Ferrier.

At the hearing, Mr. Phillips testified that he continues to have back and neck pain[23] that is made worse by too much standing and walking.[24]  He also testified that he has headaches[25] and trouble sleeping.[26]  He testified that the medications he has

---

[19]     According to http://www.webmd.com, Toradol is used for the short-term treatment of moderate to severe pain.

[20]     According to http://www.webmd.com, Talwin is used to treat moderate to severe pain by combining a narcotic pain reliever with a medication that helps prevent misuse of the narcotic.

[21]     Rec. Doc. 7-1 at 33; Rec. Doc. 7-1 at 47.

[22]     The hearing transcript is found in the record at Rec. Doc. 7-2 at 9 - 32.

[23]     Rec. Doc. 7-1 at 19, 24.

[24]     Rec. Doc. 7-1 at 19.

[25]     Rec. Doc. 7-1 at 19.

[26]     Rec. Doc. 7-1 at 20.

been given interfere with his memory[27] and lose their effectiveness after he takes them for a while.[28]  He testified that he has been told that he needs to have another back surgery,[29] but he has no insurance and has had trouble scheduling an appointment with the orthopedic department at the LSU charity hospital in Shreveport.[30]  At the time of the hearing, he was not treating regularly with any doctor for his back and neck conditions.[31]

On March 12, 2010, the ALJ rendered an opinion in which he found that Mr. Phillips is not disabled.[32]  Mr. Phillips asked the Appeals Council to review the ALJ's decision, but the Appeals Council denied his request.[33]   Accordingly, the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[34]

Mr. Phillips now seeks judicial review of the Commissioner's decision, arguing that the ALJ's decision was not supported by substantial evidence.

---

[27]     Rec. Doc. 7-1 at 19.

[28]     Rec. Doc. 7-1 at 23.

[29]     Rec. Doc. 7-1 at 21.

[30]     Rec. Doc. 7-1 at 21-23.

[31]     Rec. Doc. 7-1 at 23.

[32]     Rec. Doc. 7-1 at 37-44.

[33]     Rec. Doc. 7-1 at 4.

[34]     42 U.S.C. § 405(g).

-6-

## ASSIGNMENT OF ERRORS

Mr. Phillips contends that the Commissioner erred in finding that, taking Mr. Phillips's age, education, past work experience, and residual functional capacity into account, Mr. Phillips can perform work other than his past relevant work that is available in the national economy.  More particularly, Mr. Phillips claims that the Commissioner relied upon an inappropriate hypothetical question posed to the vocational expert in reaching that conclusion.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[35]  If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[36]  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance.[37]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or

---

[35]     *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001);

[36]     *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[37]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

medical findings support the decision.[38]   Finding substantial evidence requires scrutiny of the entire record as a whole.[39]  In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[40]


## DISCUSSION

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[41]  Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[42]  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[43]

---

[38]     *Boyd v. Apfel,* 239 F.3d at 704.

[39]     *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[40]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[41]     *Alfred v. Barnhart*, 181 Fed. App'x at 450; *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

[42]     42 U.S.C. § 423(d)(1)(A).

[43]     20 C.F.R. § 404.1572(a)-(b).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1.    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.    An individual who does not have a severe impairment will not be found to be disabled.

3.    An individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.

4.    If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made.

5.    If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed.[44]

---

[44]    *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[45] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[46]  The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[47]

The claimant bears the burden of proof on the first four steps.[48]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[49]  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.[50]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to

---

[45]     20 C.F.R. § 404.1520(a)(4).

[46]     20 C.F.R. § 404.1545(a)(1).

[47]     20 C.F.R. § 404.1520(e).

[48]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[49]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[50]     *Fraga v. Bowen*, 810 F.2d at 1304.

rebut this finding.[51]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[52]

In this case, the Commissioner found, at step one, that Mr. Phillips has not engaged in substantial gainful activity since the application date of May 8, 2008.[53] This finding is supported by the evidence in the record.

At step two, the Commissioner found that Mr. Phillips has disorders of the cervical and lumbar spine that are severe impairments.  This is also supported by the evidence in the record.

At step three, the Commissioner found that Mr. Phillips has no impairment or combination of impairments that meets or medically equals a listed impairment.  As will be discussed in more detail below, the undersigned cannot determine whether this conclusion was supported by substantial evidence and, therefore, this conclusion must be reconsidered.

At step four, the Commissioner found that Mr. Phillips cannot perform his past work.  This conclusion is supported by the evidence in the record.

---

[51]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[52]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[53]     Rec. Doc. 7-1 at 39.

-11-

At step five, the Commissioner concluded that there are other jobs in the national economy that Mr. Phillips can perform.   As explained below, the undersigned finds that this conclusion rests upon an improper hypothetical question posed by the ALJ at the hearing and must be reconsidered.

## A.   THE COMMISSIONER'S CONCLUSION AT STEP THREE MUST BE RECONSIDERED

At step three, the Commissioner found that Mr. Phillips has no impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ reached that conclusion without any discussion whatsoever of the criteria included in any listing or, more particularly, of the criteria set forth in Listing 1.04, the listing for disorders of the spine.  The ALJ also failed to explain how Mr. Phillips might or might not satisfy the criteria of any listing.  An "ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process."[54]

In *Audler v. Astrue*, the ALJ, at step three of the analysis:

> summarily concluded that "[t]he medical evidence indicates that the claimant has status post lumbar laminectomy, cervical disc herniation, headaches and

---

[54]   *Williams v. Astrue*, No. 09-0130, 2010 WL 989216, at * 3 (W.D. La. Mar. 15, 2010), citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), which in turn cites 42 U.S.C. § 405(b)(1).

chronic neck and back pain, impairments that are severe
within the meaning of the Regulations but not severe
enough to meet or medically equal one of the impairments
listed in Appendix 1, Subpart P, Regulations No. 4."  The
ALJ did not identify the listed impairment for which
Audler's symptoms fail to qualify, nor did she provide any
explanation as to how she reached the conclusion that
Audler's symptoms are insufficiently severe to meet any
listed impairment.[55]

The Fifth Circuit concluded that "[s]uch a bare conclusion is beyond meaningful

judicial review."[56]  The court then went on to explain that:

By the explicit terms of the statute [42 U.S.C. § 405(b)(1)],
the ALJ was required to discuss the evidence offered in
support of Audler's claim for disability and to explain why
she found Audler not to be disabled at that step.  Although
the ALJ is not always required to do an exhaustive
point-by-point discussion, in this case, the ALJ offered
nothing to support her conclusion at this step and because
she did not, "we, as a reviewing court, simply cannot tell
whether her decision is based on substantial evidence or
not."[57]

In Mr. Phillips's case, the ALJ did even less than did the ALJ in *Audler*.  He

simply stated that "[t]he claimant does not have an impairment or combination of

---

[55]     *Audler v. Astrue*, 501 F.3d at 448.

[56]     *Audler v. Astrue,* 501 F.3d at 448, quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th
Cir. 1996).

[57]     *Audler v. Astrue*, 501 F.3d at 448, quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th
Cir. 1986).

impairments that meets or medically equals one of the listed impairments . . . ."[58]  He did not explain what listings he considered or how he reached the conclusion that Mr. Phillips does not meet or equal them.

This is troubling because Mr. Phillips's back problem appears to meet at least some of the criteria for Listing 1.04, the listing for disorders of the spine resulting in compromise of a nerve root.  Dr. Sabri's report of May 2, 1994 indicates that, after the unsuccessful lumbar surgery, an MRI of Mr. Phillips's lumbar spine showed "moderate epidural fibrosis surrounding the S1 root on the left side with disc herniation at L5-S1 and L4-5."[59]  This indicates that there may be nerve root impingement or compression.  Additionally, many of the objective signs for such a condition are present.  Dr. Babineaux's report[60] indicates that Mr. Phillips displayed positive straight leg raise, radiating pain, a limited range of motion in his neck and also in his left leg, loss of muscle strength in his left thigh, and decreased strength in his back.

In accordance with the reasoning set forth in *Audler*, the undersigned is unable to determine whether the Commissioner's conclusion at step three is or is not based

---

[58]     Rec. Doc. 7-1 at 39.

[59]     Rec. Doc. 7-4 at 47.

[60]     Rec. Doc. 7-5 at 12-15.

-14-

on substantial evidence.  Therefore, the undersigned recommends that this matter be remanded for a thorough analysis of whether Mr. Phillips has an impairment or combination of impairments that meets or medically equals one of the listed impairments.

## B.   THE COMMISSIONER'S CONCLUSION AT STEP FIVE MUST BE RECONSIDERED

Once a claimant satisfies his burden under the first four steps of the required analysis, the burden shifts to the Commissioner to show that there is other gainful employment available in the national economy that the claimant is capable of performing.[61]

At step four, the Commissioner found that Mr. Phillips has the residual functional capacity to perform sedentary work except that he is restricted to performing simple, unskilled work.  At step five, the Commissioner then found that there are jobs that exist in significant numbers in the national economy that Mr. Phillips can perform.  In reaching this conclusion, the ALJ used the grids as a framework and elicited testimony from a vocational expert, Tommy Lafosse.

---

[61]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

-15-

Mr. Phillips contends that the ALJ erred in deciding that he is not disabled because the ALJ reached that conclusion by relying upon the vocational expert's response to improper hypothetical questions posed at the hearing.  In particular, he argues that the ALJ failed to incorporate into the hypothetical questions the severe impairment recognized by the ALJ at step two of the analysis or the additional impairment resulting from Mr. Phillips's use of a cane while referring to unspecified "additional limitations" and a nameless "condition."

The Commissioner may meet his burden at step five by reference to the Medical-Vocational Guidelines of the regulations,[62] by expert vocational testimony, or by other similar evidence.[63]  An ALJ is permitted to rely on the expertise of a vocational expert to determine whether the plaintiff's residual work skills can be used in other occupations and in identifying the specific occupations in which those skills may be used.[64]  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."[65]

---

[62]     The Guidelines, also known as the "Grids," are found at 20 C.F.R. § 404, Sub-part P, Appendix 2.

[63]     *Fraga v. Bowen*, 810 F.2d at 1304.

[64]     20 C.F.R. § 404.1566(e).

[65]     *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

To establish that work exists for a claimant at step five of the sequential disability determination process, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question.[66]  A hypothetical question posed by an ALJ to a vocational expert must reasonably incorporate all the claimant's disabilities recognized by the ALJ, and the claimant must be afforded a fair opportunity to correct any deficiencies in the hypothetical question.[67]  If, in making a disability determination, the ALJ relied on testimony elicited by a defective hypothetical question, the ALJ did not carry his burden of proof to show that despite an impairment, a claimant could perform available work.[68]  In other words, "[u]nless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ . . . a determination of non-disability based on such a defective question cannot stand."[69]

In this case, the ALJ asked Mr. Lafosse, the vocational expert, two questions. First, the ALJ asked:

---

[66]     *Boyd v. Apfel*, 239 F.3d at 706-07; *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

[67]     *Bowling v. Shalala*, 36 F.3d at 436.

[68]     *Boyd v. Apfel*, 239 F.3d at 708.

[69]     *Bowling v. Shalala*, 36 F.3d at 436.

> For purposes of my next series of questions, please assume a hypothetical person the same age, education, vocational background as the claimant.  Further assume that such a person would be limited to sedentary work with the following additional limitations, that he would be restricted to simple, unskilled jobs.  I assume such a person would be unable to return to any of the past work?[70]

Mr. Lafosse replied, "Correct."[71]  The ALJ then asked, "Are there any other jobs in the national economy such a person would be able to perform?"  Mr. Lafosse replied, "Yes, sir," and went on to describe those jobs.

The ALJ then asked the following question:

> Further assume that in addition to the restrictions I've already outlined, because of his condition, the claimant would miss work up to three days a month.  Are there any jobs in the national economy such a person would be able to perform?

Mr. Lafosse's answer was:  "No, sir."[72]

The ALJ incorporated in the hypothetical question his ruling that Mr. Phillips "has the residual functional capacity to perform sedentary work . . . except the claimant would be restricted to simple, unskilled work."[73]  Sedentary work, as defined

---

[70]     Rec. Doc. 7-1 at 30.

[71]     Rec. Doc. 7-1 at 30.

[72]     Rec. Doc. 7-1 at 31.

[73]     Rec. Doc. 8-3 at 13.

in the Social Security regulations, involves lifting no more than ten pounds at a time, occasionally lifting or carrying articles like docket files, ledgers, and small tools, sitting for about six hours out of an eight-hour workday, and occasionally walking or standing.[74]  In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday, with a morning break, a lunch period, and an afternoon break at approximate two-hour intervals.[75]  "If an individual is unable to sit for a total of six hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded."[76]

In this case, Mr. Phillips's primary complaints are low back and neck pain. Pain can impose both exertional and nonexertional limitations on an individual's ability to engage in substantial gainful activity.[77]  Nonexertional limitations include difficulty functioning due to pain.[78]  Back pain causes a nonexertional limitation

---

[74]     20 C.F.R. § 404.1567(a); *Ripley v. Chater*, 67 F.3d 552, 557, n. 25 (5th Cir. 1995); *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985).

[75]     *Guzman v. Barnhart*, 159 Fed. App'x 578, 581 (5th Cir. 2005).

[76]     *Guzman v. Barnhart*, 159 Fed. App'x at 581, quoting Social Security Ruling 96-9p, 1996 WL 374185, at *6 (July 2, 1996).

[77]     *Dellolio v. Heckler*, 705 F.2d 123, 127 (5th Cir. 1983).  See, also, *Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994).

[78]     See 20 C.F.R. § 404.1569a(c)(1).

-19-

when it requires an individual to alternate periods of sitting and standing because such a requirement limits an individual's ability to perform a full range of sedentary work.[79]  When pain imposes a nonexertional limitation, the ALJ must utilize expert vocational testimony to establish that jobs exist.[80]  More specifically, the Fifth Circuit has determined that when a claimant is required to alternate sitting and standing throughout the work day, vocational expert testimony is required.[81]  Having to alternate between sitting and standing in order to work the entire day does not fit within the definition of sedentary work.[82]  Furthermore, the regulations require that a residual functional capacity "assessment must be specific as to the frequency of the individuals need to alternate sitting and standing."[83]

In this case, however, the ALJ did not address whether Mr. Phillips's back pain requires him to alternate between sitting and standing throughout the day.  He noted in his ruling that Dr. Sabri restricted Mr. Phillips from standing or walking for prolonged periods of time but failed to note that Dr. Sabri expressly stated that Mr.

---

[79]     *Scott v. Shalala*, 30 F.3d at 35.

[80]     *Scott v. Shalala*, 30 F.3d at 35, citing *Fraga v. Bowen*, 810 F.2d at 1304.

[81]     *Scott v. Shalala*, 30 F.3d at 33-35.

[82]     *Ripley v. Chater*, 67 F.3d at 557, n. 25, citing *Scott v. Shalala*, 30 F.3d at 34.

[83]     *Sneed v. Astrue*, No. 1:08-cv-00942, 2009 WL 3448854, at *5 (W.D. La. Oct. 26, 2009).

Phillips's back pain also "becomes worse with prolonged . . . sitting."[84]  The ALJ did not develop the record to determine more specific time periods for standing, walking, or sitting that might be permissible nor did he mention Dr. Sabri's restrictions in the hypothetical question he posed to Mr. Lafosse.  Rather than evaluating the effect that Mr. Phillips's pain might have on his ability to perform sedentary work, the ALJ found Mr. Phillips's pain complaints not credible to the extent that they are inconsistent with his finding that Mr. Phillips can perform a full range of sedentary work.  The ALJ purportedly based this credibility assessment on a finding that "the claimant's reported limited daily activities are considered to be outweighed by the medical evidence of record."[85]  But the ALJ did not point to a single opinion by a medical professional or any clinical findings that contradict Mr. Phillips's testimony that his back injury and the subsequent unsuccessful back surgery have left him with a great deal of pain and significant limitations on his activities.

The ALJ also included a statement in his ruling regarding Mr. Phillips's use of a cane.  He said:  "If a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not be ordinarily significantly

---

[84]       Rec. Doc. 7-4 at 46.

[85]       Rec. Doc. 7-1 at 42.

eroded."[86]   Although Dr. Babineaux stated that the use of the cane is required for ambulation and is medically necessary,[87] the ALJ did not make a finding as to whether Mr. Phillips's use of a cane does or does not erode the unskilled sedentary occupational base, and he did not include use of a cane in his hypothetical questions. Furthermore, the ALJ did not explain why he failed to credit Dr. Babineaux's opinion.  These omissions render the hypothetical questions inadequate.

The ALJ also included in the first hypothetical question a reference to "additional limitations" that restrict Mr. Phillips to "simple, unskilled jobs."  But there is no explanation of what those "additional limitations" might be or why they necessitate such a restriction.  In the second hypothetical question, the ALJ referred to Mr. Phillips's "condition."  Again, however, he failed to clarify what "condition" he was referring to or what limitations might be caused by that "condition."

Finally, the ALJ found that Mr. Phillips's disorders of the cervical and lumbar spine are severe impairments.[88]  But the hypothetical questions asked by the ALJ did not mention any type of cervical or lumbar impairments or any limitations resulting from those impairments.

---

[86]      Rec. Doc. 7-1 at 43.

[87]      Rec. Doc. 7-5 at 14.

[88]      Rec. Doc. 7-1 at 39.

Consequently, the ALJ's reliance on the hypothetical questions posed to the vocational expert was improper because the questions did not incorporate the severe cervical and lumbar impairments that the ALJ recognized, did not incorporate any impairment related to Mr. Phillips's use of a cane, or explain the "additional limitations" or "condition" referred to in the questions.

Under some circumstances, the claimant or his representative may correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions.  But a party's failure to point out the problems in a defective hypothetical does not automatically salvage that hypothetical as a proper basis for a determination of non-disability.[89]  In this case, it is arguable that Mr. Phillips's representative had the opportunity to remedy the ALJ's hypothetical questions because, at the conclusion of his questioning, the ALJ expressly asked Ms. Ferrier if she had any questions for Mr. Phillips, and Ms. Ferrier replied that she did not.[90]  But Ms. Ferrier is not an attorney, and the ALJ had already stopped Mr. Phillips from interjecting an objection to the vocational experts responses to the ALJ's questioning.  Representation by a paralegal is not the same as

---

[89]     *Boyd v. Apfel*, 239 F.3d at 707, citing *Bowling v. Shalala*, 36 F.3d at 436.

[90]     Rec. Doc. 7-1 at 31.

-23-

representation by an attorney, and an ALJ has a heightened duty to develop the record when the claimant is represented by a paralegal.[91]

When the vocational expert was listing the jobs that were available in significant numbers in the national economy, he included grinding and polishing machine operator, printing machine operator, and sewing machine operator.  Mr. Phillips interrupted and said:  "Excuse me, Your honor – . . . [n]ow he's saying these jobs are available, but the drugs I take, you can't have no machine operations."  The ALJ responded by saying:  "I understand that.  He's not – he's talking about jobs in he [sic] national economy.  He's not talking about you specifically."[92]

Mr. Phillips's paralegal representative might reasonably have interpreted the ALJ's reaction to Mr. Phillips's interjection as meaning that no objections or questions were permitted with regard to the vocational expert's testimony.  Mr. Phillips's representative might also have reasonably interpreted the ALJ's reaction to Mr. Phillips's interjection as meaning that no remediation of the questioning was necessary since the colloquy was "not talking about [Mr. Phillips] specifically."  At any rate, this is the type of situation in which the failure to remedy the defective hypothetical questions does not overcome the defects in the questions.

---

[91]     *Jones v. Barnhart*, 372 F.Supp.2d 989, 1006 n. 4 (S.D. Tex. 2005).

[92]     Rec. Doc. 7-1 at 31.

For a hypothetical question to be proper, it need only incorporate the disabilities that the administrative law judge recognizes.[93] This is accomplished if the hypothetical incorporates the plaintiff's residual functional capacity.[94] Here, however, the ALJ's hypothetical questions indicate that the ALJ was inquiring about jobs that did not represent the full range of sedentary occupations but some vague subcategory of sedentary jobs.  First, the ALJ himself noted that Mr. Phillips cannot perform all sedentary work by limiting the hypothetical question to "simple, unskilled jobs." Second, the ALJ recognized that Mr. Phillips's use of narcotic medications for pain relief would restrict the jobs he could perform, but advised Mr. Phillips at the hearing that his hypothetical questions were not about Mr. Phillips.  But neither his questions nor his conclusions include a limitation based on the medications that Mr. Phillips takes for pain.  Third, the ALJ failed to make a finding as to whether Mr. Phillips's use of a cane – which was recognized by Dr. Babineaux as being medically necessary – narrows the number of sedentary jobs that he might be able to perform.

In summary, the hypothetical questions posed by the ALJ to the vocational expert at the hearing did not incorporate the impairments that the ALJ ultimately

---

[93]      *Wise v. Barnhart*, 101 F. App'x 950, 951 (5th Cir. 2004) (per curiam) (unpublished), citing *Bowling v. Shalala*, 36 F.3d at 435; *Morris v. Brown*, 864 F.2d 333, 336 (5th Cir. 1988).

[94]      See *White v. Astrue*, 240 F. App'x 632, 634 (5th Cir. 2007) (per curiam) (unpublished) ("Because the VE's testimony, which [plaintiff] did not challenge through cross-examination, was elicited by hypothetical questions incorporating the RFC determination, such reliance was proper.")

found to be severe.  For that reason, the vocational expert did not have all of the information needed to make a proper recommendation.  Accordingly, the undersigned finds that the ALJ's hypothetical questions were inadequate and that, in relying upon the responses to those questions, the ALJ did not carry his burden of proof to show that despite an impairment, the claimant could perform available work.[95]  Therefore, the undersigned recommends that this matter be remanded for further consideration of the jobs available in the national economy that Mr. Phillips can perform.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **REVERSED** and **REMANDED** for reconsideration of steps three and five of the disability analysis.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after

---

[95]     *Boyd v. Apfel*, 239 F.3d at 708.

receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 23rd day of November 2011.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)